**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**Case No.: 08-Civ-61449-Seitz/O'Sullivan**

TEXTRON FINANCIAL CORPORATION,
a Delaware corporation,

       Plaintiff,

v.


RV SALES OF BROWARD, INC.,
a Florida corporation, and GIGI D. STETLER,
Individually,

       Defendants.

_____/


RV SALES OF BROWARD, INC.,
a Florida corporation,

       Counter-Plaintiff,

v.

TEXTRON FINANCIAL CORPORATION,
a Delaware corporation,


       Counter-Defendant.

_____/


**TEXTRON FINANCIAL CORPORATION'S MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

       Plaintiff, Textron Financial Corporation ("TFC"), by and through its undersigned counsel

and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5 hereby moves this Court

for entry of summary judgment in its favor and against Defendants RV Sales of Broward, Inc.

{O1471424;7}

("RV Sales") and Gigi Stetler ("Stetler").  This is a contract case with no genuine issue as to any material fact, and TFC is entitled to judgment as a matter of law both as to its Complaint as well to RV Sales' Counterclaim.

**FACTUAL SUMMARY AND CASE OVERVIEW**

TFC has filed its Statement of Material Facts ("SMF") in Support of this Motion for Summary Judgment contemporaneously with this Motion and Incorporated Memorandum of Law.[1]  TFC adopts and incorporates its SMF as if fully restated herein, and provides herein only a brief summary to assist the Court in its understanding of the factual and legal basis for this Motion.

On May 23, 2008, TFC and RV Sales entered into a Credit and Security Agreement ("CASA"), wherein TFC agreed to finance RV Sales' purchase of recreational vehicles ("RVs") for resale.  SMF ¶¶ 1, 4.  Such an arrangement is commonly referred to as "floor plan financing." In return for TFC's agreement to finance RV Sales' purchases, RV Sales agreed to abide by the terms and conditions of the CASA.  The CASA, by its express terms, incorporates by reference various Finance Terms Documents ("FTD" or "FTDs"):

> "Secured Party will provide to Debtor, in a manner chosen by Secured Party from time to time, a Statement of Financial Transaction, program letter, approval letter, billing statement or other documentation, as applicable, identifying Inventory and the applicable financial terms for an Advance (each, a "Finance Terms Document" or " FTD") . . . [and] such FTD will be incorporated herein by reference."

---

[1] Hereinafter, references to the SMF, including the evidentiary support cited therein, will be made by referencing the applicable paragraph number as follows: SMF ¶__.

CASA § 3.[2]  There is no dispute in this case that: (1) TFC financed nine RVs for RV Sales; (2) RV Sales sold four of those RVs without remitting payment to TFC; and (3) RV Sales owes TFC $505,179.75 for the four RVs sold out of trust.[3]  *See* SMF ¶¶ 7, 19.  There is also no dispute that: (1) the CASA sets forth that interest will be charged pursuant to the FTDs; (2) RV Sales made only one interest payment, on July 17, 2009; and (3) RV Sales owes TFC for *some* amount of interest.  *See* SMF ¶¶ 24-25, 27, 32.  Finally, there is no dispute that a default exists pursuant to the CASA by reason *inter alia* of RV Sales failing to make principal and interest payments and by selling items of Inventory without remitting payment therefor to TFC.  SMF ¶ 22.  In fact, the only detail disputed by RV Sales is the *amount* of interest owed.  As set forth below, this dispute is merely an attempt to cloud an otherwise straightforward breach of contract/collection case, and the resolution of this "dispute" turns on the Court's application of the standard rules of contract construction and simple mathematics.  As such, there are no issues of material fact and TFC is entitled to judgment as a matter of law.

## MEMORANDUM OF LAW

### A.   Summary Judgment Standard

Summary judgment is warranted when the record evidence establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Summary judgment should be granted when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party.  *See Anderson*

---

[2]  The CASA was attached as Exhibit A to the Verified Complaint, and Exhibit 7 to the deposition of Stetler.  RV Sales and Defendants have stipulated to the authenticity of the document.  Hereafter, references to the CASA will be made by referencing the applicable section number as follows:  CASA §___.

[3]  The industry refers to amounts due for inventory sold but not paid for as "sold out of trust" or "SOT," referencing the obligation of the dealer, in this case, RV Sales, to hold the funds received upon the sale of inventory in trust.  Another common acronym is "SAU" which stands for "sold and unpaid."  For the purposes of this Motion, the two terms will be used interchangeably.

*v. Liberty Lobby*, 477 U.S. 242, 255 (1986).  The non-moving party must go beyond the pleadings and present affirmative evidence showing that there is a genuine issue of material fact for trial.  *Id*. at 252.  It is not sufficient for the non-moving party to show a mere "scintilla" of evidence, or evidence that is merely colorable or not significantly probative, in support of its position.  *Id.*  Additionally, conclusory allegations and conjecture are not sufficient to overcome a motion for summary judgment.  *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

**B.**      **RV Sales Breached the CASA and Owes TFC $537,999.85 for Unpaid Principal.**

To establish a claim for breach of contract under Rhode Island law, a party must show: (i) the existence of an agreement; (ii) a right thereunder; and (iii) breach.  *See Dugan v. Ford Motor Credit Co.*, C.A. No. 83-1727, 1984 WL 559279, at *3 (R.I. Super. May 31, 1984).[4]  It is a well-settled principle of Rhode Island contract law that "the court should read the contract 'in its entirety, giving words their plain, ordinary, and usual meaning.'"  *Irene Realty Corp. v. Travelers Property Casualty Co. of Amer.*, 973 A.2d 1118, 1122 (R.I. 2009) (quoting *Mallane v. Holyoke Mutual Ins. Co. in Salem*, 658 A.2d 18, 20 (R.I. 1995)); *Rivera v. Gagnon*, 847 A.2d 280, 284 (R.I. 2004) (citing *Rubery v. Downing Corp.*, 760 A.2d 945, 947 (R.I. 2000)); *see also Andrukiewicz v. Andrukiewicz*, 860 A.2d 235, 238 (R.I. 2004) (confirming that clear and unambiguous terms of a contract "will be given their usual and ordinary meaning and the parties will be bound thereby");*A.F. Lusi Constr., Inc. v. Peerless Ins.*, 847 A.2d 254, 258 (R.I. 2004).  "If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."  *Rivera*, 847 A.2d at 284 (citing *W.P. Assocs. v. Forcier, Inc.*, 637

---

[4]  As addressed at the hearing on May 22, 2009, the CASA has a choice-of-law provision stating that the contract shall be governed by and construed in accordance with Rhode Island law.  RV Sales does not dispute Rhode Island law applies.  CASA § 16; Stetler Dep. 258:20—259:1.

A.2d 353, 356 (R.I. 1994)); *see also Flanagan v. Kelly's Sys. of New England, Inc.*, 286 A.2d 249, 251 (R.I. 1972).

> **1.     RV Sales owes TFC the principal amount of $505,179.75 for the four items sold out of trust.**

Pursuant to the CASA, RV Sales was to remit payment to TFC upon the sale of an item of Inventory.  CASA § 8; SMF ¶¶ 8, 9.  Specifically, the CASA provides in pertinent part:

> Disposition of Inventory by Debtor; Release of Lien.
> Both Debtor and Secured Party intend for Debtor to sell the Inventory, but only in the ordinary course of its business as Debtor normally sells such Inventory. Therefore, Debtor may sell any item of Inventory provided that: (a) Debtor is not in default hereunder, (b) the price obtained for such item of Inventory is not less than the unpaid Total Debt attributable thereto, and (c) unless otherwise agreed to by Secured Party in writing in a particular case, Debtor holds all of the proceeds of any such sale in trust for, and immediately remits the unpaid Invoice Cost of such item of Inventory to, Secured Party. . . . Upon demand by Secured Party, Debtor shall immediately remit to Secured Party the full unpaid Invoice Cost of any item of inventory (which amount shall be applied in repayment of the Advance(s) relating to such item of Inventory or otherwise as determined by Secured Party in its sole discretion) as to which (i) Debtor receives any deposit or similar amount from a contemplated purchaser and/or (ii) Debtor enters into a contract to sell such item of Inventory.  The immediately preceding sentence shall not apply to any Inventory financed by Secured Party under a scheduled payment or other non-"pay as sold" program.

CASA § 8 (emphasis supplied).  Pursuant to this language, RV Sales was allowed to sell Inventory financed for it by TFC, but only in the ordinary course of its business and provided that:  (1) there was no default; (2) the unit was sold for what was owing to TFC on that unit; and (3) all the proceeds of sale were held in trust and immediately remitted to TFC, *unless otherwise agreed by TFC in writing in a particular case*.  *See id.*  RV Sales breached these obligations by selling items of Inventory without immediately paying those sums to TFC or holding the proceeds in trust.  SMF ¶¶ 18-20.

Although RV Sales appears to have recently developed a theory that it was not under a "pay as sold" program, it has pointed to no document from TFC stating that RV Sales was under

a special arrangement and exempted from the terms of section 8 of the CASA. *See* SMF ¶¶ 9-16; *see also Irene Realty Corp.*, 973 A.2d at 1123 (rejecting plaintiff's contention of additional coverage, stating "[t]he plain and simple fact is that no such writing exists"). Rather, Stetler points to the curtailment[5] payment schedule in the program letter and in each Statement of Financial Transaction ("SOFT")[6] to suggest that she was entitled to take as much as 540 days to pay for a sold unit. However, this position is not supported by the relevant contract documents. Stetler's own testimony on this issue shows that the payment terms she points to in the SOFTs actually pertain only to the payment of curtailments for new inventory, and thus cannot constitute a writing that established a program other then a "pay as sold" program. *See* SMF ¶¶ 9-15; *see also* CASA § 10(f) (requiring payment of the Invoice Cost within 5 days of any item being "lost, damaged or destroyed"). In addition, as RV Sales has acknowledged, once a unit is sold, TFC no longer has a security interest in the unit and a curtailment would only contractually and logically apply to a unit in which TFC had a security interest, that is, a unit that is still "inventory." SMF ¶ 11. Finally, RV Sales further acknowledges that a "pay as sold" program requires RV Sales to remit payment to TFC immediately upon the sale of each unit. SMF ¶ 9.

Significantly, RV Sales admits that it sold four RVs without remitting payment to TFC *and that payment is due to TFC therefor*. SMF ¶¶ 18-19. RV Sales agrees the principal amount due to TFC on these four items is $505,179.75. SMF ¶ 19. RV Sales explained that it was having financial difficulties and found itself using the proceeds from TFC-financed-units to pay GECDF, and that it would pay TFC for these units if it had the funds. SMF ¶¶ 19, 21. There is

---

[5] "Curtailment" is the term used to reference a periodic payment of principal required on a floor-planned unit of inventory.

[6] A SOFT is a document automatically generated after an invoice is received and processed by TFC for a RV unit that TFC committed to finance. A SOFT is one of the FTDs as set forth in the CASA that binds the Dealer absent any objection within ten (10) days of its date.

no question that RV Sales obtained over half a million dollars worth of Inventory that was financed by TFC which it sold and received cash for, and that such cash was then used for RV Sales' own benefit and advantage to, among other things, pay its other creditors.  As RV Sales does not dispute it sold and failed to pay for these units, and that it owes TFC the full principal due for these units, summary judgment is appropriate and should be granted as to the $505,179.75 principal balance owed to TFC for the four units sold out of trust.

> **2.      RV Sales owes TFC the principal amount of $32,820.10 for the deficiency on the items recovered and sold by TFC.**

The CASA provides that in the event of default, TFC "shall have all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws."  CASA § 11.  Pursuant to the Uniform Commercial Code, after default, a secured party may take possession of the collateral securing the debt it is owed and sell, lease, license, or otherwise dispose of such collateral.  R.I Gen. Laws §§ 6A-9-609, 6A-9-610.  After selling the collateral, the secured party is entitled to any deficiency between the amount owed by the debtor and the amount recovered from the sale of collateral.  R.I. Gen. Laws § 6A-9-608.

TFC recovered three items of Inventory from RV Sales.  TFC sent out the requisite notices of private sale to RV Sales and Stetler.  SMF ¶ 41.  TFC also solicited bids on the recovered Inventory through its extensive network of dealers around the country before it sold the Inventory to the buyers who offered to pay the most for the Inventory.   SMF ¶ 42.  Of the three items of Inventory repossessed by TFC, one unit, serial number 903907, was repurchased by the manufacturer for the full principal amount financed ($19,549.60).  SMF ¶ 43.  The other two units were sold as follows: serial number A94191, financed for $63,545.00, sold for $44,500.00; and serial number 288006, financed for $45,925.10, sold for $32,150.00.  SMF ¶ 43.

Thus, there is a principal deficiency balance of $32,820.10 for the three units recovered by TFC. SMF ¶ 43.[7]

As TFC has complied with its obligations under the Uniform Commercial Code, it is entitled to judgment for the deficiency balance of $32,820.10.  *See* R.I. Gen. Laws § 6A-9-608.

**C.    RV Sales Owes TFC for Unpaid Interest.**

In return for TFC's agreement to finance RV Sales' acquisitions of recreational vehicles, RV Sales "promise[d] to pay to [TFC] the original invoice cost ("Invoice Cost") of each item of Inventory financed … *pursuant to each applicable FTD*, together with interest and charges on the Invoice Cost and/or fees on the account as specified in each applicable FTD and this Agreement .…"  CASA § 4(a) (emphasis supplied).  RV Sales agrees that the SOFTs set forth the interest start date, and that date is the same as the invoice date.  SMF ¶¶ 6g., 24.  RV Sales also agrees that *some* interest is due, but disagrees as to the amount that is due.  SMF ¶ 27.  Because the proper calculation of interest requires the Court to interpret the contract and apply elementary math/accounting principles, RV Sales' dispute over the calculation does not create a material question of fact that would hinder this Court's grant of summary judgment.

**1.    TFC has not breached the CASA or the implied covenant of good faith and fair dealing.**

RV Sales contends that TFC breached the CASA and the implied covenant of good faith and fair dealing by charging interest on the invoice amounts before transmitting payment to the manufacturers of the Inventory.  Countercl. ¶¶ 16-18.  RV Sales' contention that this is a breach

---

[7] The ninth unit, a Fleetwood Revolution, is not the subject of this action.  There is a dispute between RV Sales, Fleetwood and TFC as to whether this unit was to have been financed by TFC for RV Sales.  After initially financing this unit, TFC then "reversed" the financing transaction by deducting the financed principal amount from other monies due by TFC to Fleetwood.  The claim asserted by TFC in this case does include a small amount of interest from the invoice date until the date TFC offset the principal amount from funds otherwise due to Fleetwood.

of the CASA is simply not supported by the plain language of the CASA and the incorporated FTDs, or the sequence of events that occurs with respect to financing a unit.

As explained in the SMF, RV Sales submitted orders to various manufacturers to purchase RVs for its retail sales operations. SMF ¶ 6a. The manufacturer – in this case all of the Inventory except one unit came from Fleetwood – would contact TFC to confirm that TFC would agree to finance each order. SMF ¶ 6b. TFC would internally confirm that RV Sales was not in default, and that there was availability under its credit line. If RV Sales was in good standing and sufficient credit remained, TFC would issue an approval number to the manufacturer, at which point TFC became bound to pay the manufacturer for the unit regardless of later defaults under the CASA or FTDs by a dealer. SMF ¶ 6c. The manufacturer would then build and/or ship the RV unit to the dealer based on TFC's commitment and would invoice TFC. SMF ¶¶ 6c-e. With respect to the units, ownership in each unit transferred to RV Sales pursuant to the Manufacturer's Certificate of Origin ("MSO"),[8] which is the document used to acquire a certificate of title, and the invoices. With one exception, the invoices and the MSOs bear the same date.[9] SMF ¶ 30. TFC would enter the information into its computer system (the "CLS" system) and prepare a SOFT which was then electronically posted on the dealer's page on the TFC website and mailed to the dealer. SMF ¶ 6f. TFC would then pay for the RV unit in accordance with TFC's separate agreement(s) with the manufacturer. SMF ¶ 6h.

As set forth above, Rhode Island law requires a contract to be viewed in its entirety, and the terms given their plain and ordinary meanings. *Irene Realty Corp.*, 973 A.2d at 1122-23;

---

[8] MSOs are also sometimes called Statements of Origin, and both are commonly referred to as "MSOs", which is the acronym frequently used in the depositions of RV Sales and TFC in this matter.

[9] With respect to the one Athens Park unit, the MSO is dated five days after the invoice date. SMF ¶ 30.

*Rivera*, 847 A.2d at 284.  In support of its motion, TFC highlights herein several provisions of the CASA, in addition to section 4(a) discussed above, that speak to the issue being raised by RV Sales, but in doing so, TFC does not intend to suggest that the contract should not be viewed in its entirety.

> 2.   Advances and Eligibility.
> . . . Secured Party may advance funds (each, an "Advance") for acquisition, financing and/or refinancing by Debtor of inventory . . . and/or for such other purposes as are acceptable to Secured Party. . . . Debtor understands and agrees that each Advance will be solely at Secured Party's discretion, and Debtor expressly disclaims any right to expect otherwise as a result of any course of dealing between Debtor or Secured Party, any particular need for any such Advance by Debtor, Secured Party's dealings with others, Secured Party's arrangements with any Manufacturer, or otherwise.  To be eligible for an Advance, Inventory must be:  (a) serialized, unless otherwise agreed to by Secured Party; (b) adequately described on an invoice issued to Debtor by an approved manufacturer or distributor (each, a "Vendor"); (c) approved by Secured Party, in Secured Party's discretion, for financing pursuant to a program authorized by the applicable Vendor; and (d) encumbered by a first priority perfected security interest in favor of Secured Party.

CASA § 2 (emphasis supplied).  This provision makes clear that an invoice must be issued in order for the Inventory to be eligible for an Advance, thus establishing that an invoice must be generated prior to the advancement of funds.

> 3.   Financing Terms.
> Secured Party will provide to Debtor, in a manner chosen by Secured Party from time to time, a Statement of Financial Transaction, program letter, approval letter, billing statement or other documentation, as applicable, identifying Inventory and the applicable financial terms for an Advance (each, a "Finance Terms Document or "FTD").   Any such FTD may, among other things, provide for a maturity rate of interest as set forth in an applicable FTD, (provided no Event of Default has been declared) to be paid when Collateral has aged (the terms of such aging to be set forth in an FTD) and/or a default rate of interest (or other amounts associated with a default by Debtor, which shall be payable by Debtor upon the occurrence of any Event of Default (as defined below) or as otherwise set forth in the FTD.  Debtor's failure to notify Secured Party in writing of any objection to a particular FTD within ten (10) days of the date such FTD is first made available to Debtor shall constitute Debtor's: (a) acceptance of all terms thereof; (b) agreement that Secured Party is financing

such Inventory at Debtor's request; and (c) agreement that such FTD will be incorporated herein by reference.

CASA § 3.  As discussed above, each SOFT sets forth the applicable financial terms for the item of Inventory described in the SOFT.  Each SOFT clearly states the interest start date is the same date as the invoice date.  SMF ¶¶ 6g, 24.  The monthly Inventory Billing Statement, also an FTD, also identifies the invoice date and the number of days of interest being charged on each unit. SMF ¶ 24.  RV Sales never notified TFC in writing of any objection to any particular FTD (whether a SOFT or Billing Statement).  SMF ¶ 26.

> 5.   Disclaimer of Warranties; Unconditional Nature of Obligations.
> …DEBTOR AGREES THAT ITS OBLIGATIONS TO SECURED PARTY WITH RESPECT TO COLLATERAL FINANCED BY SECURED PARTY SHALL BE ABSOLUTE AND UNCONDITIONAL AT ALL TIMES AFTER SECURED PARTY HAS ADVANCED **OR COMMITTED TO ADVANCE** ALL OR ANY PART OF THE INVOICE COST OF SUCH COLLATERAL TO THE SELLER THEREOF. …

CASA § 5 (emphasis supplied; however, in the original, the entire provision is in bold).  Section 5 alerts RV Sales that its obligations are triggered by either TFC's commitment to pay the manufacturer or by its advancement of funds.   *See generally* SMF ¶ 6(b)-(f).

To briefly recap – the CASA states that RV Sales will be charged interest pursuant to the FTDs.  Each SOFT, which is an FTD, sets forth the interest start date and payment terms for each item of Inventory.  Notably, as evidenced by the various SOFTs, the interest start date is always the same as the invoice date.  The CASA provides that *in order to be eligible for* an Advance, an invoice must first be generated.  The SOFTs and Inventory Billing Statements are incorporated into the CASA, and RV Sales never submitted a written objection to any particular SOFT or Billing Statement.

Furthermore, and fatal to RV Sales' contention, there is nothing in the CASA or the FTDs that states "TFC agrees that no interest will be charged prior to it paying the manufacturer

for an item of Inventory."  No such language exists in the CASA because there was no such agreement, and it is not the function of this Court to rewrite the contract.  *See Estate of Meller v. Adolf Meller Co.*, 554 A.2d 648, 653 (R.I. 1989); *Scullian v. Petrucci*, 276 A.2d 277, 279 (R.I. 1971); *56 Assocs. v. Frieband*, 89 F. Supp. 2d 189, 193 (D.R.I. 2000); *see also Irene Realty Corp.*, 973 A.2d at 1123 (rejecting plaintiff's contention because "[t]he plain and simple fact is that no such writing exists").

As TFC charged interest in a manner permitted by the express terms of the CASA, it cannot be found to be in breach of the contract for doing so.  Likewise, since this manner of charging interest was consistent with and specifically bargained for in the contract, there has been no breach of the implied covenant of good faith and fair dealing.  *See Havlick v. Johnson & Wales University*, 490 F. Supp. 2d 250, 261 (D.R.I. 2007) (explaining that the implied covenant of good faith and fair dealing exists to ensure that "parties will act in a manner consistent with the purposes of the contract").  Accordingly, TFC is entitled to summary judgment on Counts I and II of RV Sales' Counterclaim.

**2.    TFC lawfully charged interest to RV Sales which is currently due and owing.**

As previously discussed, the SOFT establishes the interest rate for each item of Inventory, which rate increases at specified intervals as the Inventory ages.  *See* SMF ¶ 24.  RV Sales does not dispute that *some* interest is due.  SMF ¶ 27.  RV Sales' objection is essentially that it does not want to pay interest for the 10 to 24 days, varying by unit, that marks the difference between the invoice date and the date that TFC transmitted payment to the manufacturer.[10]  *See* SMF ¶ 29 and specifically Exhibit F to Herman Affidavit referenced therein

---

[10]    As shown in Exhibit F to the Affidavit of Neal Herman ("Herman Affidavit"), TFC transmitted payment for the 8 Fleetwood units financed for RV Sales to the manufacturer 10 to 15 days from invoice date, and transmitted payment on the sole Athens Park unit 24 days after the invoice date.

and being filed simultaneously herewith.  RV Sales erroneously contends that TFC may not charge interest before transmitting payment to the manufacturer and any such interest is usurious.

As explained above, TFC commits to paying the manufacturer when it contacts TFC and obtains an approval number for a unit ordered by RV Sales.  Thus, TFC is legally bound to the manufacturer for the invoice price and is required to pay that price to the manufacturer regardless of whether RV Sales ever pays TFC for the unit.  Accordingly, committed – but not yet advanced – amounts are properly included within the "unpaid principal balance of the net proceeds of the loan" because, as of the invoice date, RV Sales was obligated to pay TFC the invoice amount. *See* SMF 6c; R.I. Gen. Laws § 6-26-2.  Indeed, under the CASA, RV Sales was obligated as of the invoice date to pay the invoice amount to TFC, irrespective of when TFC paid the manufacturer.  The binding agreement between the manufacturer and TFC as to when TFC would pay the manufacturer is simply irrelevant to the legal obligation of RV Sales to pay TFC.[11]

Rhode Island law provides without equivocation that contracts are to be applied in accordance with their express terms, and the express terms here require interest be charged from the invoice date and that the effective rate of interest is to be determined by spreading the

---

[11] While a credit card transaction is not perfectly analogous, there are similarities.  In a credit card transaction, the customer "charges" goods or services.  The customer is obligated to pay the credit card issuer, rather than the vendor, and immediately begins accruing interest on the amount "charged."  Funds are not disbursed between the vendor and the card issuer until some later time, but the customer gets the immediate benefit of the goods or services.  More and more common in today's marketplace, credit card purchasers order goods via the internet, and must wait for the goods to be shipped.  As with the point-of-sale transaction, the customer becomes obligated to pay the card issuer and immediately begins accruing interest.  In either event, the customer enjoys the benefit of the buying power his credit card affords him, just as in the floor plan transaction, the dealer has the benefit of being able to order an RV, knowing the manufacturer will build and ship the RV based upon the commitment by TFC to pay for the RV.

amount over the entire period the loan is outstanding,[12] this Court should apply the express terms of the contract and reject RV Sales' claim that the interest was inappropriate or usurious.[13] *See Rivera*, 847 A.2d at 284 ("If the contract terms are clear and unambiguous, judicial construction is at an end for the terms will be applied as written."); *see also Irene Realty Corp.*, 973 A.2d at 1123 ("the court should refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity where none is present"); *Andrukiewicz*, 860 A.2d at 238 (confirming that clear and unambiguous terms of a contract "will be given their usual and ordinary meaning and the parties will be bound thereby").

As there is no legal preclusion to TFC charging interest to RV Sales prior to TFC's transmission of payment to the manufacturer in accordance with TFC's separate agreement(s) with the manufacturer(s), RV Sales must pay the interest due and owing pursuant to the CASA. As of the date of filing this Motion, the interest due from RV Sales is $63,143.55.  SMF ¶ 36. Accordingly, summary judgment should be granted in TFC's favor, and RV Sales' defenses and counterclaims should be rejected.

**D.    TFC is Entitled to Its Expenses Incurred in the Repossession of Inventory.**

As shown throughout this memorandum, RV Sales defaulted under the CASA.  Thus, pursuant to the terms of the CASA, RV Sales is obligated to pay TFC the "expenses of retaking, holding, preparing for sale, selling and the like." CASA § 11.

TFC incurred expenses, and has consequently been damaged in the amount of $5,800.16 in repossessing RV Sales' inventory.   SMF ¶¶ 44-45.   Thus, summary judgment should be

---

[12]  *See* SMF ¶¶ 24-25, CASA § 16.

[13]   In fact, even using RV Sales' theory of how interest should be charged (which TFC asserts is incorrect and inconsistent with the CASA and SOFTs), RV Sales acknowledged that the interest charged by TFC was less than 21%, which is the legal limit in Rhode Island.  SMF ¶ 28; R.I. Gen. Laws § 6-26-2.

entered in favor of TFC and against RV Sales in the amount of $5,800.16 as the actual expenses

incurred by TFC in relation to the repossession of the Inventory.

**E.**      **TFC is Entitled to Its Attorney's Fees and Expenses Incurred in the Maintenance of this Action.**

According to the terms of the CASA, "Debtor is also responsible to pay all other costs

and expenses incurred by Secured Party in connection with this Agreement, including but not

limited to attorneys' fees and other legal expenses in connection with or arising out of any

deficiency suit, collection actions or otherwise following an Event of Default." CASA § 11.

TFC instituted this action as a result of RV Sales' default pursuant to the terms and

conditions of the CASA. TFC has incurred attorneys' fees and expenses and will continue to

incur such fees and expenses through the completion of this case. Because TFC has established

its entitlement to summary judgment against RV Sales for breach of contract, it is entitled to

recover its fees and costs pursuant to the CASA. Because the Southern District's Rules permit

additional briefing by TFC (specifically a reply), and the Court may set a hearing to address this

motion, TFC's fees and expenses will continue to accrue during the pendency of this Motion.

TFC respectfully requests this Court allow TFC to present its evidence supporting the specific

amount of its attorneys fees and expenses upon this Court issuing its ruling on this dispositive

Motion. Accordingly, summary judgment should be granted to TFC as to RV Sales' liability for

attorneys fees, which amount will be submitted and established by appropriate evidence upon the

Court's ruling upon this motion or at the completion of the case.

**F.**      **RV Sales' Unjust Enrichment Claim is Without Legal Support.**

To establish unjust enrichment, RV Sales must prove the following three elements: (i) the

conferral of a benefit upon TFC; (ii) appreciation of the benefit by TFC; and (iii) acceptance of

the benefit under circumstances that render it inequitable for TFC to retain the benefit without

payment of the value thereof.  *See R&B Elec. Co. v. Amco Constr. Co*., 471 A.2d 1351, 1355-56 (R.I. 1984); *see also Fondedile, S.A. v. C.E. Maguire, Inc.*, 610 A.2d 87, 97 (R.I. 1992).  Rhode Island courts have consistently recognized that "where there is an express contract between the parties referring to a subject matter, there can be no implied contract arising by implication of law governing that same subject matter."  *Mehan v. Gershkoff*, 230 A.2d 867, 870 (R.I. 1967); *see also Cochran v. Lorraine Mfg.*, 155 A.2d 572, 575 (R.I. 1931).  If there is an express contract between the parties, an essential element of unjust enrichment is lacking because no benefit has been conferred "for which the [parties] did not bargain."  *Fondedile*, 610 A.2d at 97.  In such a case, "[i]t would be unjust after execution of the contract . . . to deprive [the defendant] of the benefit for which it bargained," and if the defendant "was enriched because it made a good deal for itself, the enrichment is not unjust."  *Id.* at 98.

There is no dispute that the parties entered into an express contract.  There is no basis upon which RV Sales can claim that there is anything other than a contractual relationship between the parties.  Accordingly, Rhode Island law precludes a claim for unjust enrichment in this case, and TFC is entitled to summary judgment as to Count III of RV Sales' Counterclaim.

**G.**     **Stetler is Jointly and Severally Liable for the Sums Owed to TFC by RV Sales.**

Stetler signed a personal guaranty as an inducement for TFC to enter into a financing agreement with RV Sales.  SMF ¶ 2.  Pursuant to the terms of the guaranty signed by Stetler, she is jointly and severally liable with RV Sales for any debts incurred by RV Sales under the terms of the CASA.  *See* SMF ¶¶ 2, 48.[14]  In fact, the guaranty is absolute and unconditional, and specifically provides in pertinent part:

---

[14] The guaranty is attached as Exhibit B to the Verified Complaint and Exhibit 8 to Stetler's deposition.  References to specific sections of the guaranty will be to the guaranty itself.

3.   <u>Absolute Nature of Guaranty</u>.  The obligations of Guarantor under this Guaranty are absolute and unconditional.  Guarantor shall not be released from such obligations for any reason, nor shall such obligations be reduced, diminished or discharged for any reason, including:

. . .

(c)   <u>Invalidity of Guaranteed Obligations.</u>   The invalidity, illegality or unenforceability of any Guaranteed Obligation for any reason whatsoever, including, but not limited to: the existence of valid defenses, counterclaims or off-sets to any Guaranteed Obligation; the violation of applicable usury laws by any Guaranteed Obligation; . . . .

SMF ¶ 48; Guaranty § 3.  Thus, even if the Court were to find that RV Sales was due some set-off or had established a valid defense (which it has not), Stetler would nevertheless still be obligated for the full amount due and owing to TFC pursuant to the express terms of the guaranty.

As shown above, RV Sales is liable to TFC for: $505,179.75 for items sold out of trust; $32,820.10 for principal deficiency on the units recovered; $63,143.55 for interest as of the date of filing this Motion; $5,800.16 for TFC's costs related to its repossession of RV Sales' inventory; as well as attorneys' fees and costs to be assessed at the completion of the case.  Thus, RV Sales' total liability to TFC is $606,943.56, plus accruing interest, attorneys' fees and costs.

The entry of summary judgment against Stetler, jointly and severally, and for TFC in the amount of $606,943.56, plus accruing interest, attorneys' fees and costs, is appropriate and should be granted because TFC has established that Stetler entered into a valid guaranty with TFC, that Stetler has breached her guaranty by failing and refusing to remit payment, and that TFC has been damaged as a result of their respective breaches.

## CONCLUSION

TFC has demonstrated that there are no questions of material fact as to the issues addressed above, that Defendants have breached their agreements with TFC, and that TFC is entitled to judgment as a matter of law on its Complaint as well as RV Sales' Counterclaim.

Accordingly, Plaintiff, TEXTRON FINANCIAL CORPORATION, respectfully requests that this Court enter Summary Judgment in its favor and against Defendant, RV Sales as follows:

   (i)  in the amount of $505,179.75 for principal owed on items of inventory sold without remitting payment therefore to TFC;

   (ii)  in the amount of $32,820.10 for the principal deficiency balance on the items of inventory recovered and sold by TFC;

   (iii)  in the amount of $5,800.16 for the repossession costs incurred by TFC as a result of RV Sales' breach of the terms of the CASA;

   (iv)  in the amount of $63,143.55 for unpaid interest, plus interest continuing to accrue daily; and

   (v)  for attorneys' fees and costs incurred by TFC in the maintenance of this action, to be determined at the completion of the case.

TFC further requests this Court enter Summary Judgment against Gigi Stetler, jointly and severally, in the amount of $606,943.56, plus accruing interest and attorneys' fees and costs, for her breach of her personal guaranty.  TFC requests the Court enter such other and further relief that this Court deems just and proper.

Respectfully submitted November 6, 2009.

            *s/ James E. Foster*   
            James E. Foster, Esq.
            Florida Bar No.142015
            Kelly J.H. Garcia, Esq.
            Florida Bar No. 694851
            **Akerman Senterfitt**
            Post Office Box 231
            Orlando, Florida  32802-4950
            Telephone:  407-843-7860
            Facsimile:   407-843-6610
            Email: james.foster@akerman.com
              kelly.garcia@akerman.com
            and

ADORNO & YOSS, LLP
Mitchell R. Bloomberg
Fla. Bar No. 197289
Email: MRB@adorno.com
Robin Corwin Campbell
Fla. Bar No. 327931
Email: rcampbell@adorno.com
2525 Ponce de Leon Blvd., Suite 400
Miami, Florida 33134
Phone: (305) 460-1000
Fax: (305) 460-1422

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/  James E. Fostser*
James E. Foster, Attorney

**SERVICE LIST**

**TEXTRON FINANCIAL CORPORATION vs. RV Sales OF BROWARD, INC. et al.**
**CASE NO.  08-Civ-61449-Seitz/O'Sullivan**

**United States District Court, Southern District of Florida**

Counsel for Plaintiff

James E. Foster
Kelly J.H. Garcia
Akerman Senterfitt
420 S. Orange Avenue, Suite 1200
Orlando, FL  32801
Tel: (407) 423-4000
Fax: (407) 843-6610
Email:  james.foster@akerman.com
          kelly.garcia@akerman.com

Mitchell R. Bloomberg
Florida Bar No. 197289
Robin Campbell
Florida Bar No. 327931
Adorno & Yoss, LLP
2525 Ponce de Leon Boulevard
Suite 400
Miami, Florida  33134
Tel:  (305) 460-1000
Fax:  (305) 460-1422
Email:  mrb@adorno.com
          rcampbell@adorno.com

Counsel for Defendants

David Stone, Esq.
Law Offices of David Stone, P.A.
1900 North Commerce Parkway
Weston, FL  33326
Tel:  (954) 617-0300
Fax:  (954) 617-0304
Email:  nan@davidstonelaw.com
          bahaba123@aol.com

Jay Howard Solowsky
Solowsky & Allen
150 W Flagler Street
Suite 2000 Museum Tower
Miami, FL  33130
Tel:  (305) 371-2223
Fax:  (305) 373-2073
Email: jsolowsky@psahlaw.com